## BLANCHARD v. DONALDSONVILLE MOTORS CO., Inc.

### No. 1747.

Court of Appeal of Louisiana. First Circuit.

Nov. 6, 1937.

C. A. Blanchard, of Donaldsonville, in pro. per., and Emmet Alpha, of New Orleans, for appellant.

C V. St. Amant, of Donaldsonville, for appellee.

LE BLANC, Judge.

Plaintiff sued the defendant in damages for an alleged breach or violation of contract to repair his damaged automobile and for wrongful and illegal detention of the same after it had been repaired. The defendant denied the alleged breach and set out on the contrary that it had fully complied with the contract and defended its retention of the car on the failure of the plaintiff to have paid the bill for repairs. Assuming the position of a plaintiff in reconvention, defendant then asserted its claim against the plaintiff for the repairs made and for parts furnished in connection therewith and also for charges for storage of the car in its garage since the time it had been ready for delivery. The amount of the bill for repairs including labor and parts is alleged to be $102.30 and the storage is fixed at 50 cents per day. Judgment is accordingly prayed for in reconvention against the plaintiff in the sum of $102.30, with interest, and for the further sum of 50 cents per day for each day since the car has been in storage, to wit, May 16, 1936.

Judgment was rendered in the court below against the plaintiff on his demand for damages and in favor of the defendant on the reconventional demand in the sum of $102.30, with interest and costs. The claim for storage charges was not allowed.

From the judgment as rendered, plaintiff took an appeal, both suspensive and devolutive to this court. While the appeal was pending, plaintiff, on July 2, 1937, paid to defendant's attorney, the sum of $144.80 and took from him a receipt worded as follows:

"July 2, 1937.
"C. A. Blanchard vs. Donaldsonville Motor Company, Inc.
"No. 4447
"Received of C. A. Blanchard, the sum of $144.80, in full payment and satisfaction of the following:

| | |
|---|---|
| Judgment rendered in favor of Reconvenor | $102.30 |
| Interest on said judgment | 5.75 |
| Stenographic fees paid by Reconvenor | 36.75 |
| Total | $144.80 |

"It is understood and agreed that all rights of appeal are specially reserved."

Claiming that by the payment thus made plaintiff has acquiesced in the judgment and has suffered the loss of his appeal, the defendant has filed a motion to dismiss the same. In the alternative, it is urged that even though it does not constitute an acquiescence in the whole judgment, by it, plaintiff at least has forfeited his right to appeal from the judgment against him on the reconventional demand.

In support of the motion to dismiss, defendant relies on that part of article 567 of the Code of Practice which reads as follows:

"The party against whom judgment has been rendered can not appeal:

"1. * * * if he have acquiesced in the same, by executing it voluntarily."

Pretermitting the question as to whether the payment as embodied in the quoted receipt constituted a voluntary acquiescence as far as the judgment on the reconventional demand was concerned, or not, we cannot see how it could be considered as an acquiescence at all in the judgment dismissing plaintiff's demand for damages. It is noted that that judgment is not mentioned and is in no way involved in the payment as shown by the receipt. On the contrary, the receipt specifically recites that the payment is made in satisfaction of the judgment rendered in favor of reconvenor.

The position of the defendant is that there being but one judgment and one decree handed down and but one appeal taken from that judgment, it must be considered as a whole, and any action taken on the appeal must necessarily relate to that judgment in its entirety. But in this case, there were in reality two judgments and decrees. One disposed of the plaintiff's claim for damages against the defendant and the other of the defendant's demand against the plaintiff in reconvention. The latter demand enjoyed the status of an independent suit and was as distinct a cause of action as if it had been filed in a separate proceeding (see Stringfellow v. Nowlin Bros. et al., 157 La. 683, 102 So. 869), and the appellant has the right to maintain his appeal from the judgment disposing of that demand regardless of what happens to the appeal in so far as it concerns the judgment on the main demand. It is well settled now that even in the same judgment, a part of which is favorable and the other unfavorable to the

appellant, he can maintain his appeal from the unfavorable part although he is shown to have acquiesced in the favorable part of the judgment. Foster & Glassell Co., Ltd., v. Harrison et al., 173 La. 550, 138 So. 99. So much the more do we think he should be permitted to maintain his appeal with regard to either one or the other, where, as here, the judgment, although handed down as one, in reality disposes of two separate and distinct causes of action. We are certainly of the opinion that the appellant has not forfeited his appeal in so far as the judgment rejected his demand for damages against the defendant and it now remains for us to consider the alternative proposition urged by the defendant that the appeal should be dismissed in so far as it concerned that part of the judgment which awarded it its claim in reconvention.

On this point, it is the contention of the defendant that the payment of the judgment, even though made with reservation of the right of appeal, was such an acquiescence as to forfeit the appeal under the provisions of the article of the Code of Practice herein relied on. No reservation, it is urged, "is effective to do away with the legal consequences the law attaches to the act" and, in support of the contention, we are referred to the cases of Jolley v. Vivian Oil Co., 131 La. 937, 60 So. 622, and Raines v. Dunson, 143 La. 321, 78 So. 574. We find that in each of those two cases the appeal was from an indivisible judgment part of which was favorable and the remainder unfavorable to the appellant, which, as we have shown is not the situation in the case before us. Moreover, most of the authorities cited and apparently relied on by the court in those two cases are the same which appear to have been overruled in the later decision of Foster & Glassell Co., Ltd., v. Harrison et al., supra. This last decision makes plain what is the court's interpretation of article 567 of the Code of Practice and Chief Justice O'Niel's concurring opinion rather emphasizes the point that the only acquiescence there can be by the party against whom a judgment has been rendered is the voluntary payment or satisfaction of that judgment. We cannot for our part see how the payment of a judgment, with reservation of the right of appeal, can constitute a voluntary acquiescence in such judgment within the contemplation of the article of the Code of Practice. A very good reason which suggests itself why a party cast under such a judgment may want to pay and still maintain his right of appeal is to minimize, as much as possible, the amount of interests and costs or perhaps some penalties which attached to it, pending the appeal.

The motion to dismiss the appeal is, for the reasons stated, overruled.

Taking up now the case on its merits, we find that the plaintiff's claim for damages against the defendant is predicated on a violation of the alleged contract to repair his automobile, in the following particulars: (1) Failure to repair and deliver the car within the period of time agreed upon; (2) in charging him and exacting from him a sum greatly in excess of the price agreed upon, before delivering the car to him; and (3) in failing to have made certain minor repairs such as levelling off dents in the body, repairing the horn, a rear light stand, and a damaged seat cushion.

An accident to plaintiff's automobile on Saturday night April 26, 1936, gave rise to the contract for repairs, breach of which he contends caused him the damages he seeks to recover from the defendant. On the following morning, John Capone, employed by the defendant as foreman in its garage, saw the damaged car parked in front of plaintiff's home. He stopped and solicited the repair job. Plaintiff contends that the contract came into existence at that time and that Capone agreed, on behalf of his employer, to repair the car for the sum of $40 and to deliver it to him within 5 days. He sets out however, that on the following morning, at a conference held in his office between him, Mr. Ewen, president of the defendant company, and Capone, that the contract was modified to the extent that, in addition to the charge of $40, he was to pay for a rear glass, one door glass, and two door handles. As thus modified, that is the contract which plaintiff insists existed between them and which he now claims was violated by the defendant in not having his car ready within the time specified and in charging him for a new radiator for the car when the agreement contemplated repairs to his radiator as well as to all other damaged parts.

Plaintiff testifies positively that defendant, through its agents, agreed to have his car ready within 5 days. He states that because of the pressing need he had for it, he considered time as of the essence of the contract and that is what makes him so

positive on this point. Mr. Ewen is equally as positive that there was no time set for the delivery of the car. He says that he suggested all the way through to Mr. Blanchard that his car being a Desoto and there being no local agent for that make of automobile, there would be some delay in getting the parts required for the repair job. This strikes us as being a reasonable explanation and tends to support his version of the matter on this point. At any rate, as did the trial judge, we do not think that plaintiff's testimony is sufficient to prove a breach of the alleged contract in this respect.

With regard to the breach alleged in the second particular, we find that it is the charge of $48 for a new radiator which is the principal item in this part of the controversy. Mr. Ewen states in his testimony that in his conversation with Mr. Blanchard he told him that if the radiator could be repaired that the repairs would be included in the charge of $40. Of course it is unreasonable to believe that he or any other garageman would have bound himself by contract to repair a radiator which was beyond repair. The conversation at which this was discussed took place on Monday morning following the accident when the extent of the damage to the radiator had not yet been determined. On ascertaining its extent, after the radiator had been taken down, Mr. Blanchard was advised of its condition, and that it was impossible to repair it is amply shown by the testimony. We think the testimony shows that Mr. Blanchard appreciated this and there is satisfactory proof to the effect that he authorized them to get a new one. Plaintiff complains that he is charged $48 for the radiator when it is shown that the cost is $40. We believe however that in view of the expense which defendant was put to in taking the old radiator to Baton Rouge to see if it could be repaired, and of the telegrams paid in ordering the new one, it was justified in charging the $48 involved in this one transaction.

Plaintiff was not any more successful in sustaining his charge of breach of contract in defendant's failure to have made the minor repairs which we have referred to, such as levelling dents in the body of the car, repairing the horn, etc. We do not find from the testimony that these were included in the agreement to repair the damage to the car from the wreck such as defendant's agents saw it at the time the price of $40 was agreed upon.

We agree with the district judge when he says that "the real cause of the controversy did not arise over the radiator" or the failure of defendant to repair and deliver it in 5 days; "it arose" as he says, "at the time of the delivery of the car" which was on May 20, 1936. Mr. Ewen himself delivered the car to plaintiff at his house and insisted at that time that plaintiff pay him at least the amount of cash he had put out for the new parts. Plaintiff insisted that there were yet certain repairs to be made and besides, he says that he wanted to have the work done by the defendant inspected by some other mechanic. He offered to send defendant his check in 2 or 3 days, but this Mr. Ewen refused, and rested on his right of retaining the car in order to preserve his lien for repairs. To have his credit questioned no doubt irritated Mr. Blanchard but, if Mr. Ewen insisted, he had no alternative but to pay.

But plaintiff now contends that the defendant has lost its lien of garage and repair man accorded by act No. 209 of 1926, as it did not provisionally seize the car within 90 days from the date of the making of the repairs, that, under the statute, being the lifetime of the lien. The contention seems to be that, as far as the garageman is concerned, the lien accorded under the act of 1926 is exclusive and that he does not enjoy the lien granted the workman or artisan under Civil Code, art. 3217, on the movable which he has repaired or made as long as "the thing continues still in his possession."

This very same issue was presented in the case of Hart Enterprise Electrical Co., Inc., v. Stewart (La.App.) 168 So. 791, and decided adversely to the plaintiff's present contention. Our views are in thorough accord with the views expressed in the well-considered opinion therein handed down by our brethren of the Orleans Parish Court of Appeal.

The defendant made due proof of its claim in reconvention save the charge for storage which was rejected in the lower court. An answer to the appeal was filed praying for an amendment of the judgment in that respect. On this item, we agree again with the district judge that the proof was not of such nature as to justify its allowance.

The judgment having properly disposed of all issues in the case, it is accordingly affirmed at the costs of the appellant.